Dear Mr. Hughes:
This office is in receipt of your opinion request in which you inquire as to whether the East Feliciana Parish School Board may develop an industrial park on a sixteenth section tract with funding obtained through an economic development grant.
The law provides that Parish School Boards may lease sixteenth section lands granted by Congress for public school purposes under limited conditions as set out in LSA-R.S. 41:640(C) which reads:
 The parish school boards of parishes within which there lies a township containing sixteenth section or any portion of a sixteenth section shall have the authority to lease, contract, or both, with any other governmental agency or department for the use of sixteenth section lands within the boundaries of their respective parishes. The proceeds and revenues thereof shall be credited to the parish school boards in which such townships are situated in proportion to the percentage of the sixteenth section lands lying in each parish.
LSA-R.S. 41:981 does allow indirect economic development of sixteenth section land by establishing a procedure under which sixteenth section land may be leased under LSA-R.S. 41:640(C) "to a parish or municipality through a corporate industry development board organized under the provisions of Chapter 7 of Title 51 of the Louisiana Revised Statutes of 1950, as an instrumentality of the parish or municipality, subject to approval of such lease by the Louisiana Board of Commerce and Industry".
Therefore, it is permissible for the East Feliciana Parish School Board to lease a sixteenth section tract in that parish under these limited conditions.
Further LSA-R.S. 41:711 and 41:712 provide for the sale of sixteenth section land. However, this may only be done after a vote in favor of the sale by the residents of the township in which the sixteenth section is located. This is in contrast to the sale of other school property which may be sold, if no longer needed for school purposes, using the appropriate public bid procedure.
It should also be noted that sixteenth section lands are not titled in the name of the school board, but rather in the name of the State of Louisiana in its sovereign capacity. Proceeds from any sale of sixteenth section lands are not deposited with a school board but rather are deposited in the state account where interest from the account goes to the school board.
In short, sixteenth section land is unique, even as school property, and its use and sale has been extremely limited and protected by the various applicable state statutes.
The Attorney General's office has previously opined in La. Atty. Gen. Opinions 97-408 and 03-0345 that "the school board is not authorized or obligated to engage in economic development." Further evidence of this prohibition is presented in La.R.S.47:8001 through 48:8027, known as the Tax Increment Development Act, which specifically excludes school boards and school districts from the application of the Act.
The one contradictory authority is given in Denham SpringsEconomic Development District vs. All Taxpayers, Property Owners,et al., No. 885 So.2d 1153, 2004-1013 (La.App. 1 Cir. 6/4/04) in which the First Circuit allowed school board participation in economic development; however, the participation was "narrowly drawn to the particular facts and circumstances of this case".Id. at 1165. However, the Supreme Court, in de novo
exanimation, reversed the First Circuit's decision in cause number 2004-C-1674 rendered by the Supreme Court on February 4, 2005, opinion by Justice Traylor, but did not base its decision on
the economic development issue.
In conclusion, the East Feliciana Parish School Board may not develop an industrial park on a sixteenth section tract in the parish. It has been opined in previous La. Attorney General Opinions that school boards may not participate in economic development. Recent cases are consistent with this position.
We hope this sufficiently answers your inquiries, however if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
BY: _____________________________________________
 CHARLES F. PERRY Assistant Attorney General
CCF, Jr./CFP/tp
OPINION NUMBER 97-408
Mr. Michael E. Lancaster Attorney General of Louisiana — Opinion April 15, 1998
90-A-2 PUBLIC FUNDS — Loan, Pledge or Grants
90-B-2 LEASES
97 SCHOOLS SCHOOL DISTRICTS
La. Const. Art. VII, § 14; R.S. 41:1211, et seq; R.S. 17:87.6
Tensas Parish School Board may lease the Rosenwald High School site in compliance with the public bid law.
Mr. Michael E. Lancaster Civil Assistant District Attorney Sixth Judicial District East Carroll, Madison, Tensas Parishes P.O. Box 1389 Tallulah, Louisiana 71284
RICHARD P. IEYOUB
Dear Mr. Lancaster:
This office is in receipt of your opinion request regarding the lease of Rosenwald High School by the Tensas Parish School Board. Specifically, you raise the following issues for our consideration:
 ()Can the Tensas Parish School Board lease an abandoned school site to a non-profit organization without going through a bid process?
 ()Can the rent be for a nominal rate, such as $1.00 per year?
()Are there any restrictions on the length of the lease?
 ()Are the answers any different if the purpose of the lease is to enhance economic development?
In response to the first issue raised, we direct your attention to LSA-R.S. 17:87.6 which provides:
 Any parish or city school board may sell, lease or otherwise dispose of, at public or private sale, for cash or on terms of credit, any school site, building, facility or personal property which is not used and, in the judgment of the school board, is not needed in the operation of any school or schools within its jurisdictions. Any such sale, lease or disposal of such school property shall be on such terms and conditions and for such consideration as the school board shall prescribe.
The plain language of this statute allows a school board to lease any school site which is not used and is not needed in the operation of schools. Also applicable, however, is LSA-R.S. 41:1214, regarding the leasing of public lands. LSA-R.S. 41:1214 requires advertisement in the official journal of the parish where the land is located and secret, sealed bids forwarded through the United States mail. In Hall v. Rosteet,169 So.2d 903 (La. 1964), the Louisiana Supreme Court concluded that in the absence of an express permissive provision in a special law that authorizes a public entity's leases to be negotiated without advertisement and competitive bidding, all public lands must be leased in accordance with the provisions of LSA-R.S. 41:1214. Accordingly, it is the opinion of this office that leasing of any school site under the provisions of LSA-R.S. 17:87.6 shall be pursuant to the advertisement and competitive bidding requirements of LSA-R.S. 41:1214. In accord: Atty. Gen. Ops. 93-483, 89-209.
Turning to your second question, we direct your attention to the provisions of LSA-Const. Art. 7 § 14(A), which in pertinent part states:
 "[T]he funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
 If the School Board leases the property for less than a serious consideration, then the lease would be tantamount to a donation, in violation of the Constitution. See Atty. Gen. Op. 89-209, which determined that the consideration for the lease of School Board property should relate to the value and utility of the property as well as area market conditions. In our opinion, $1.00 per year is not serious and adequate consideration. Your second question must, therefore, be answered in the negative.
The third issue raised by your request concerns the term of the lease. As previously stated, school board leases must adhere to the public bid process, LSA-R.S 41:1211 et seq. Therefore, the term of the lease is governed by LSA-R.S. 41:1217(A) which provides that the term shall not exceed ten years. LSA-R.S.41:1217(A)(1-2) allows extensions of this ten year period when the lessee adds or contracts for permanent improvements to be constructed or placed on the land, but these extensions may not exceed thirty years beyond the initial ten year period.
In response to the final issue which you raise, we direct your attention back to LSA-R.S. 17:87.6, which places no emphasis on the purpose of the lease. Furthermore, the School Board is not authorized or obligated to engage in economic development. As such, the opinion of this office regarding the issues raised in your request would not change if the purpose of the lease was to enhance economic development.
To summarize, it is the opinion of this office that the Tensas Parish School Board may lease the Rosenwald High School site in compliance with the public lease law.
Specifically, the board must follow the advertisement and competitive bidding requirements of LSA-R.S. 41:1214 and the term limitations of LSA-R.S. 41:1217. The lease must be for a serious and adequate consideration and this opinion does not change if the purpose of the lease is to enhance economic development.
Trusting this addresses your concerns, I am
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv
OPINION NUMBER 03-0345
Mr. Robert Prejeant, Attorney Attorney General of Louisiana — Opinion December 4, 2003
Syllabus
90-A-2 PUBLIC FUNDS Loan Pledge or Grants
172-A WATER DISTRICTS
La, Const, Art. VII, Sec. 14 prohibits Terrebonne Parish Consolidated Waterworks District No. 1 from utilizing its funds for the construction of a waterline intended to serve private interests, whether or not the project is undertaken in cooperation with the Terrebonne Parish Consolidated Government.
Mr. Robert Prejeant, Attorney Terrebonne Parish Consolidated Waterworks District No. 1 P. O. Box 669 Houma, Louisiana 70361-0669
RICHARD P. IEYOUB
Dear Mr. Prejeant:
Reference is made to your request, on behalf of Terrebonne Parish Consolidated Waterworks District No. 1 ("Waterworks"), for an Attorney General's opinion regarding the use of Waterworks funds for construction of a waterline which will serve property expected to be subdivided by its private owner, for sale as commercial lots.
You letter indicates that it is the long-established policy of Waterworks to require real estate developers and other sub-dividers of property to bear the expense of the installation of water mains or lines to newly developed or subdivided areas. In spite of this policy, it has been suggested that Waterworks install the waterline in question, which will run adjacent to an existing road right-of-way and within a waterline installation right-of-way which is expected to be granted by the landowner/developer, pursuant to a cooperative endeavor with the Terrebonne Parish Consolidated Government ("Terrebonne"), in the interest of economic development. It is our understanding that the terms of the proposed cooperative endeavor will require Terrebonne to provide either $50,000.00 or half of the project costs associated with the installation of the waterline. It is assumed that any costs of the proposed waterline installation project which are not borne by Terrebonne will be paid by the District, with District funds. Specifically, the question to be addressed by this office is whether or not Waterworks may engage in the proposed construction project for installation of the waterline, the expenses for which will be shared by Waterworks and Terrebonne, in order to provide economic development to the area where the property to be developed is located.
As your letter indicates, you are aware that the questioned presented by your request must be addressed in light of the provisions of La. Const. (1974) Art. VII, Sec. 14, which contains the constitutional standard for the lawful use of public funds and property. La. Const. Art. VII, Sec. 14(A) generally prohibits the state and its political subdivisions from loaning, pledging or donating public funds, assets or property to persons, associations or corporations, public or private.
This office has long recognized the caution which must be exercised in the expenditure of public funds. Historically, the Attorney General has followed the Louisiana Supreme Court's interpretation of La. Const. Art. VII, Sec. 14, as set forth inCity of Port Allen v. Louisiana Mun. Risk, 439 So.2d 399 (La. 1983), wherein the Court states: " this Section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." The previous opinions of this office recognize that the requirement of a legal obligation to expend public funds or use public property is the threshold predicate for the constitutionality of an expenditure or use.[1] Pertinently, in City of Port Allen, supra, the Court stated: " even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporation or to individuals merely for a public purpose'." See also: Attorney General's Opinions Nos. 02-0125 and 01-0389.
It is our understanding that the proposed waterline installation project is to be undertaken by Waterworks in the interest of economic development; however, this office is not aware of, nor did our research reveal, any provision of law which would obligate or authorize a waterworks district to engage in economic development, or to utilize the public funds entrusted to it for operation of a public water distribution system for economic development. As such, we are constrained to opine that La, Const, Art. VII, Sec. 14 prohibits Terrebonne Parish Consolidated Waterworks District No. 1 from utilizing its funds for the construction of a waterline intended to serve private interests, whether or not the project is undertaken in cooperation with the Terrebonne Parish Consolidated Government. In accord: AttorneyGeneral's Opinion No. 00-57, which determined that a consolidated gravity drainage district could not use public funds entrusted to it for drainage purposes for economic development. AttorneyGeneral's Opinion No. 97-408, which determined that a school board could not lease property it owned for a nominal rent, even in the interest of economic development, because school boards are not authorized or obligated to engage in economic development.
We trust the foregoing to be helpful. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: ________________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dam
[1] Although the requirement of a legal obligation is the threshold predicate for the constitutionality of an expenditure of public funds, it is not, the only predicate. The expenditure must also be for a public purpose and create a public benefit proportionate to its cost. Attorney General's Opinion No. 90-63.